## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

Civil Action No. 1:25-cv-_____

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

Plaintiff,

v.

**SOUTH VALLEY CARE CENTER, LLC,**

Defendant.

**(JURY TRIAL DEMAND)**

---

## COMPLAINT

---

### NATURE OF THE ACTION

This is an action under the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and Title I of the Civil Rights Act of 1991 ("Title I") to correct unlawful employment practices on the basis of age and retaliation and to provide appropriate relief to Charging Parties Maria Nevarez and Maria Perez and a class of aggrieved individuals who were adversely affected by such practices. As described in greater detail below, the Equal Employment Opportunity Commission (the "EEOC" or the "Commission") alleges South Valley Care Center, LLC ("South Valley" or "Defendant") subjected Charging Parties and a class of aggrieved individuals to harassment because of their age (over 40) and failed to prevent and correct this harassment. South Valley also subjected the Charging Parties and a class of aggrieved individuals to disparate treatment based on different terms and conditions of employment because of their age. Finally, South Valley unlawfully discharged the Charging

Parties and a class of aggrieved individuals because of their age and/or in retaliation for opposing

unlawful employment practices under the ADEA and Title VII.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337,

1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of

Title VII, as amended, 42 U.S.C. § 2000e-5(f)(1), (3); Section 102 of Title I, 42 U.S.C. § 1981a;

and pursuant to Section 7(b) of the ADEA, as amended, 29 U.S.C. § 626(b), which incorporates

by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938, as amended, 29

U.S.C. §§ 216(c) and 217.

2.      The employment practices alleged to be unlawful were committed within the

jurisdiction of the United States District Court for the District of New Mexico and venue

properly lies in the District of New Mexico.

## PARTIES

3.      Plaintiff EEOC is the agency of the United States of America charged with the

administration, interpretation and enforcement of Title VII and the ADEA and is expressly

authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-

5(f)(1), and Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of

Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and Public Law 98-532 (1984), 98 Stat. 2705.

4.      At all relevant times South Valley, a limited liability company, has continuously

been doing business in the State of New Mexico.

5.      At all times relevant, South Valley has continuously had at least 15 employees.

6.      At all relevant times, South Valley has continuously been an employer engaged in

an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C.

§§ 2000e(b), (g) and (h), and under Sections 11(b), (g), and (h) of the ADEA, 29 U.S.C.

§§ 630(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

7.     More than thirty days prior to the institution of this lawsuit, Charging Parties

Maria Nevarez and Maria Perez filed charges with the EEOC alleging violations of Title VII and

the ADEA by South Valley.

8.     Maria Nevarez filed charge of discrimination number 543-2023-00654 with the

EEOC on May 4, 2023.

9.     The EEOC provided South Valley with notice of Nevarez's charge on May 8,

2023.

10.    Maria Perez filed charge of discrimination number 543-2023-00656 with the

EEOC on May 11, 2023.

11.    The EEOC provided South Valley with notice of Perez's charge on May 21, 2023.

12.    The EEOC investigated the charges of discrimination.

13.    On October 4, 2024, the EEOC sent South Valley Letters of Determination

regarding the charges of discrimination.

14.    In the Letters of Determination, the EEOC found reasonable cause to believe

South Valley violated Title VII and the ADEA.

15.    In the Letters of Determination, the EEOC invited South Valley to join with the

EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment

practices and provide appropriate relief.

16.    The EEOC and South Valley were unable to reach an agreement through the

conciliation process.

17.      On December 20, 2024, the EEOC issued to South Valley Notices of Failure of Conciliation advising South Valley that the EEOC was unable to secure from South Valley a conciliation agreement acceptable to the EEOC.

18.      All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### A. Defendant South Valley

19.      South Valley is a long-term nursing care facility located in Albuquerque, New Mexico.

20.      South Valley provides 24-hour services to its residents.

21.      South Valley has both housekeeping and laundry departments.

22.      At all relevant times, Leonarda Valencia, Director of Housekeeping and Laundry, supervised all housekeeping and laundry employees.

23.      At all relevant times, Valencia had the authority to hire, fire, and discipline housekeeping and laundry department employees.

24.      The laundry aide position at South Valley required workers to wash, dry, fold, and deliver clothes and linens to residents' rooms.

25.      The laundry aide position also supposedly required an undefined level of English proficiency.

26.      South Valley, however, regularly hired workers with limited English proficiency and some of its workers are exclusively monolingual Spanish speakers.

27.      At all relevant times, multiple workers in the laundry department were either monolingual Spanish speakers or had limited English proficiency.

28.     To communicate with Spanish-speaking employees, South Valley used bilingual employees to translate and interpret communications and some policies.

29.     Director Valencia was bilingual, spoke Spanish fluently, and regularly communicated with Spanish-speaking employees in Spanish before 2021.

30.     Beginning in 2022, Jennifer Walton became the Human Resources Director at South Valley.

31.     At all relevant times, Walton was responsible for Human Resources functions at South Valley, including training, onboarding, hiring, and firing employees.

**B. Charging Party Maria Nevarez's Employment with South Valley**

32.     South Valley hired Maria Nevarez as a housekeeper in 2013.

33.     In 2018, Nevarez transferred to the laundry department to work as a laundry aide.

34.     Nevarez is a woman of Mexican origin and has limited English proficiency.

35.     At the time of her hire, Nevarez was 40 years old.

36.     During Nevarez's employment with South Valley, Valencia was Nevarez's supervisor.

37.     Valencia regularly communicated with Nevarez in Spanish before 2021, and Valencia knew Nevarez had limited English proficiency.

38.     Throughout her employment with South Valley, Nevarez was an excellent employee.

39.     Nevarez received multiple awards from South Valley for her outstanding work performance and she consistently received positive performance evaluations.

40.     For example, on Nevarez's September 2021 evaluation, she received the highest score of "outstanding" in every category and her supervisor noted she was a "great employee."

41.     On Nevarez's final performance evaluation, dated June 13, 2022, Nevarez received the highest score of "outstanding" in five categories and ratings of "very good" and "good" in two remaining categories.

**C. Charging Party Maria Perez's Employment with South Valley**

42.     South Valley hired Maria Perez as a laundry aide on or about February 14, 2022.

43.     Perez is a woman of Mexican origin with limited English proficiency.

44.     Perez was 56 years old when she was hired by South Valley.

45.     When Perez was hired and onboarded in February 2022, South Valley used bilingual employees as interpreters for Perez's new employee orientation.

46.     Valencia was Perez's supervisor for the duration of Perez's employment.

47.     Valencia knew Perez had limited English proficiency.

48.     Valencia communicated with Perez in Spanish on occasion or used other bilingual employees to communicate written or oral directives.

49.     Perez was an excellent employee and received consistently positive performance evaluations while employed by South Valley.

50.     On Perez's first performance evaluation dated March 7, 2022, she received the highest marks, including "outstanding" ratings in every category and Valencia wrote Perez was doing "exceptional" work and she was "very friendly with fellow employees."

51.     On Perez's final June 13, 2022, performance evaluation, Perez received scores of "very good" in every category and Valencia wrote Perez was "an excellent employee."

**D. Age Harassment, Discrimination, and Retaliation at South Valley**

52.     On or about 2014, Valencia told Nevarez, who was pregnant at the time and over the age of 40, "You should be ashamed of yourself. Getting pregnant at 40 years old. You don't do your job right like that."

53.     Starting on or about early 2021, Valencia began harassing older workers because of their age on an at least a monthly, sometime weekly, basis.

54.     Valencia openly mocked older workers, including Nevarez and Perez, about their age.

55.     For instance, Valencia told both Nevarez and Perez that no one would hire old ladies like them.

56.     At one point, in 2021, when Nevarez complained to Valencia about her treatment of older workers, Valencia responded by saying to Nevarez, "You are too old now, you cannot get another job."

57.     Valencia repeated similar statements to Nevarez and Perez throughout 2021 and 2022, telling them on a monthly and sometimes weekly basis that they would be unable to find other work due to their age, no one would hire old women like them, and they were too old to get new jobs.

58.     In 2021 and 2022, Valencia regularly allowed younger workers to take numerous breaks like smoke breaks during work hours but would not do the same for older workers.

59.     In 2021 and 2022, Valencia also regularly gave younger workers their preferred schedules and days and times off.

60.     When older workers complained they were not receiving the same treatment as younger workers with respect to their schedules, Valencia said the younger workers needed the days off more because they have small children.

61.     Also, starting in 2021, Valencia began criticizing Mexican employees on a monthly, sometimes weekly, basis regarding their inability to speak English fluently.

62.     Valencia, who is bilingual, would sometimes pretend not to understand or speak Spanish, and other times, would ignore Spanish-speaking employees altogether.

63.     Valencia told Spanish-speaking employees when they complained about her failure to communicate with them in Spanish, "I could hire employees that only speak English."

64.     On or about May 2022, Nevarez and Perez heard Paul Valencia, a laundry employee in his twenties, laughing with Valencia about not hiring people who speak Spanish.

65.     On or about May 2, 2022, Nevarez, Perez, and Gloria Martinez, another laundry aide, had a meeting with Valencia, Walton, and Dee Gipson, South Valley's Office Administrator and the supervisor of all managerial employees.

66.     During the May 2, 2022 meeting, Nevarez, Perez, and Martinez complained about Valencia's treatment of older, Spanish-speaking employees and told Gipson and Walton that Valencia was engaging in age and national origin discrimination.

67.     In response, Valencia denied the accusations and yelled at Nevarez, Perez, and Martinez, saying "the discrimination does not exist," and "you're not going to get another job because you're old," "who's going to hire older women like you?" and "I could hire employees that only speak English."

68.     South Valley did not investigate the claims of discrimination made by Nevarez, Perez, and Martinez during the May 2, 2022 meeting.

69.     As Human Resources Director, Walton specifically confirmed during the EEOC's investigation that South Valley did not investigate Nevarez and Perez's complaints.

70.     Walton further stated, "The younger employees spoke English, while the older employees did not. Yes, Leona [Valencia] did have favoritism towards the younger employees, but she tried to be fair."

71.     Walton also stated, "Most of the older people complained about Leona Valencia."

72.     At the end of the May 2, 2022 meeting, Valencia gave Nevarez a disciplinary write-up in English for "insubordination" for failing to sign out inventory correctly.

73.     Nevarez signed the write-up after another employee orally translated it for her.

74.     The oral translation of the write-up was incorrect, however, and Nevarez did not understand that the document she signed was a disciplinary warning for not following inventory procedures.

75.     Nevarez followed these same inventory procedures correctly for years.

76.     On or about June 2022, Valencia told the English-speaking employees not to give peanuts to a resident because the resident could choke on them.

77.     This instruction was not given to Spanish-speaking employees.

78.      On or about June 27, 2022, Perez and Davina Valdez, a younger laundry aide in her early twenties, had a meeting with Walton, Gipson, and Valencia.

79.     At the meeting, Perez complained she was offended by Valdez's cussing and poor work ethic.

80.     Perez also complained that Valdez called Perez "stupid" and "crybaby."

81.     Perez reported at this meeting that when she complained to Valencia about Valdez's conduct (including Valdez's rude comments, Valdez constantly taking smoke breaks, texting on her cellphone, and failing to help clean up), Valencia laughed off Perez's concerns.

82.     Perez again reported to Walton and Gipson she felt discriminated against because of her age and national origin by Valencia because Valencia did not address Valdez's behavior.

83.     Perez also reported hearing Valencia, Valdez, and another worker discussing new hires for the laundry department and Valdez said, "please no Spanish speaking people."

84.     Perez also told Walton and Gipson she feared retaliation for reporting her concerns but she did so because she wanted the working conditions to improve.

85.     Walton's record of this meeting states the complaints made at this meeting constituted the second time Spanish-speaking, older workers accused Valencia of discrimination and favoritism of younger, English-speaking employees.

86.     According to South Valley's records of the June 27, 2022 meeting, Valencia "became heated" when Perez complained about discrimination and Walton asked Valencia to step out and "take a breather" because Valencia had "directed Maria [Perez] to quit."

87.     Walton ended the meeting by telling Perez and Valdez they were not being discriminated against and any misunderstandings were due to communication errors.

88.     Walton promised to monitor the situation and regularly check in with Perez and Valdez to make sure any issues were resolved.

89.     Walton, however, did not monitor or otherwise follow up after the meeting.

90.     On or about July 7, 2022, a meeting was held for all laundry employees and Nevarez and Perez again complained of discrimination based on age and national origin.

91.      Management did not investigate the complaints made by Perez and Nevarez.

### E. Maria Perez's Termination

92.        On August 4, 2022, Perez called out sick due to illness.

93.        Perez called and spoke to Valencia and Valencia approved Perez's absence.

94.        Perez provided a doctor's note with her return-to-work date as August 6, 2022.

95.        Perez, however, was not recovered by her next shift, August 7, 2022, and called out sick again on this date.

96.        Valencia again approved this absence.

97.        On August 8, 2022, Perez was still sick and called out sick again.

98.        Valencia again approved this absence.

99.        On August 9, 2022, Perez was still not recovered, and she again called and spoke with Valencia about not being able to report for work due to her continued illness.

100.       During the phone call, Valencia told Perez that South Valley could not wait for Perez to return to work and she was fired.

101.       Shortly after Perez spoke with Valencia, Walton called Perez and fired her.

102.       Valencia later claimed Perez never called and Perez's termination was due to her failure to show up for her shift, something South Valley calls a "no call no show."

103.       Walton prepared the termination paperwork and despite writing that Perez failed to call her supervisor about her absence, marked "quit with notice" on Perez's paperwork.

104.       Under South Valley's absenteeism policy applicable to Perez at the time, "Employees absent for more than two (2) consecutive days without reporting in . . . may be considered as having 'voluntarily quit' . . . per their supervisor's determination. (Note: If the employee can provide an acceptable explanation to management, this rule may not apply . . . . )."

105.    Perez did not have an attendance infraction prior to August 9, 2022, and she was never disciplined before for any attendance issues.

106.    Indeed, the incident on August 9, 2022 was Perez's first and only alleged "no call no show" and Perez was not alleged to have more than two consecutive days of not reporting in under South Valley's absenteeism policy.

107.    At the time of her termination, Perez had over 34 hours of sick leave and 36 hours of vacation available to her.

108.    Perez was not given the chance to use her accrued sick or vacation leave before she was terminated.

109.    When interviewed by the EEOC, Valencia, Gipson, and Walton all provided different rationales for Perez's termination, including who made the ultimate decision to terminate Perez.

110.    Perez was 56 years old at her termination.

111.    South Valley hired a 31-year-old worker for Perez's position a couple of days later and this worker took over Perez's previous schedule.

112.    Perez was terminated less than five weeks after her last complaint of discrimination.

113.    South Valley also gave younger workers, like Walton, who had documented, chronic attendance problems, time to improve and did not immediately terminate younger workers upon their first and only attendance infraction.

### F. Maria Nevarez's Termination

114.    On or about August 15, 2022, Valencia and Walton met with Nevarez, Martinez, and Valdez about a disagreement.

115.    At this meeting, Nevarez again complained of age and national origin discrimination.

116.    Nevarez's complaints of age and national origin discrimination were ignored by management.

117.    Instead, Nevarez was told that if she had further problems with Valdez, the younger laundry aide, Nevarez would be required to transfer to the housekeeping department.

118.    On August 25, 2022, Nevarez was accused of moving a laundry basket in front of a dryer Valdez was trying to access and folding laundry on the trashcan.

119.    On August 29, 2022, Nevarez received a write-up for the August 25 incident, even though Valdez never filed a complaint about incident.

120.    The write-up required Nevarez to transfer to the housekeeping department or face termination should she refuse the transfer.

121.    The required transfer was to a less desirable position in housekeeping where Nevarez would work alone and would not be able to choose her schedule. It would also require her to work Fridays and Saturdays.

122.    Valdez was not asked to transfer or otherwise disciplined despite previous misconduct.

123.    Valdez was also a newer employee, hired as a laundry aide in 2021, while Nevarez worked for South Valley for approximately nine years and had a stellar performance record.

124.    Nevarez refused the transfer and refused to sign the write-up.

125.    Nevarez was terminated on August 29, 2022.

126.    Nevarez's termination on August 29, 2022 occurred just over two weeks after her last complaint of discrimination on August 15, 2022.

127.    During the EEOC investigation, Walton, Gipson, and Valencia gave different testimony about why Nevarez was terminated and who made the final decision regarding her termination.

128.    After her termination, Walton wrote Nevarez a letter of recommendation.

129.    In the letter, Walton described Nevarez as a "steadfast," "industrious" employee and "instrumental" to the success of the department.

130.    Walton "highly" recommended Nevarez for any future jobs.

131.    A worker their twenties or thirties was hired for Nevarez's position within a few weeks of her termination.

### G. Other Aggrieved Individuals

132.    The EEOC seeks relief on behalf of Nevarez and Perez as well as a class of other aggrieved individuals employed by South Valley.

133.    These aggrieved individuals are either over the age of 40 when they were employed by South Valley or were retaliated against after they complained about discrimination.

134.    Like Nevarez and Perez, a class of other older employees were harassed and subjected to a hostile work environment at South Valley because of their age (over 40).

135.    Like Nevarez and Perez, a class of older aggrieved individuals were regularly berated and belittled by management or other South Valley employees because of their age.

136.    Like Nevarez and Perez, other older workers were also subject to different terms and conditions of employment, including less favorable scheduling, fewer breaks, and harsher punishment for attendance or policy infractions than younger workers.

137.     Despite complaints from older employees about age harassment, South Valley failed to take adequate corrective and remedial steps to correct or prevent the harassment.

138.     Like Nevarez and Perez, a class of employees at South Valley complained about harassment, retaliation, and discrimination, including age and national origin discrimination.

139.     Soon after they complained about discrimination, South Valley retaliated against this class of other employees, including subjecting the employees to retaliatory discharge.

140.     South Valley also discharged older workers because of their age.

141.     For instance, one older worker was terminated after a younger worker reported the older worker for allegedly making one rude comment.

142.     Even though the older worker denied the allegation, was never previously disciplined for any policy violation, and was otherwise an excellent employee, South Valley immediately terminated her.

143.     Younger workers who made rude comments at South Valley were not immediately terminated or disciplined.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### HOSTILE WORK ENVIRONMENT BASED ON AGE
### 29 U.S.C. § 623(a)

144.     The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

145.     The EEOC brings this first claim of relief on behalf of Nevarez, Perez, and other aggrieved older workers over the age of 40.

146.    Since at least January 1, 2021, South Valley has engaged in unlawful employment practices in violation of Section 4 of the ADEA, 29 U.S.C. § 623(a), by subjecting Nevarez, Perez, and other aggrieved older workers to a hostile work environment based on their age.

147.    The harassing conduct described in the preceding paragraphs was unwelcome and was sufficiently severe or pervasive to alter the terms and conditions of Nevarez's, Perez's, and the other aggrieved older workers' employment.

148.    For example, Valencia subjected Nevarez, Perez, and other aggrieved older workers to unwelcome comments and treatment based on their age on at least a monthly, sometimes weekly, basis.

149.    The harassment of Nevarez, Perez, and other aggrieved older workers was open, notorious, and widely known at South Valley.

150.    Nevarez, Perez, and other aggrieved older workers also reported the age harassment and discrimination to South Valley management.

151.    Despite receiving complaints and having knowledge of the hostile work environment, South Valley failed to take adequate actions to stop, prevent or remedy the harassment of Nevarez, Perez, and the other aggrieved older workers.

152.    The effect of South Valley's actions has been to deprive Nevarez, Perez, and other aggrieved older workers of equal employment opportunities because of their age, over 40, and otherwise adversely affect their status as employees.

153.    The unlawful employment practices complained of above were willful within the meaning of Section 7(b) of the ADEA, 28 U.S.C. § 626(b).

**SECOND CLAIM FOR RELIEF**
**DISCRIMINATION BASED ON AGE - TERMS, CONDITIONS, OR**
**PRIVILEGES OF EMPLOYMENT**
**29 U.S.C. § 623(a)**

154.     The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

155.     The EEOC brings this second claim of relief on behalf of Nevarez, Perez, and other aggrieved older workers over the age of 40.

156.     Since at least January 1, 2021, South Valley has engaged in unlawful employment practices in violation of Section 4 of the ADEA, 29 U.S.C. § 623(a), by discriminating against Nevarez, Perez, and other aggrieved older workers with respect to their terms, conditions or privileges of employment.

157.     For instance, South Valley treated older workers less favorably than younger workers, including by giving younger workers their preferred schedules and more breaks and by disciplining older workers more harshly because of their age.

158.     The effect of South Valley's actions has been to deprive Nevarez, Perez, and other aggrieved older workers of equal employment opportunities because of their age, over 40, and otherwise adversely affect their status as employees.

159.     The unlawful employment practices complained of above were willful within the meaning of Section 7(b) of the ADEA, 28 U.S.C. § 626(b).

**THIRD CLAIM FOR RELIEF**
**DISCRIMINATORY DISCHARGE BASED ON AGE**
**29 U.S.C. § 623(a)**

160.     The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

161.      The EEOC brings this third claim of relief on behalf of Nevarez, Perez, and other aggrieved older workers over the age of 40.

162.      South Valley engaged in unlawful employment practices in violation of Section 4 the ADEA, 29 U.S.C. § 623(a), by discharging Nevarez, Perez, and other aggrieved older workers because of their age.

163.      At the time of their discharges, Nevarez, Perez, and other aggrieved older workers were doing satisfactory work but were discharged despite their satisfactory work performance.

164.      The positions of Nevarez, Perez, and other aggrieved older workers were not eliminated but instead were filled with younger workers.

165.      The effect of South Valley's actions has been to deprive Nevarez, Perez, and other aggrieved older workers of equal employment opportunities because of their age, over 40, and otherwise adversely affect their status as employees.

166.      The unlawful employment practices complained of above were willful within the meaning of Section 7(b) of the ADEA, 28 U.S.C. § 626(b).

**FOURTH CLAIM FOR RELIEF**
**RETALIATION IN VIOLATION OF THE ADEA**
**29 U.S.C. § 623(d)**

167.      The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

168.      The EEOC brings this fourth claim of relief on behalf of Nevarez, Perez, and other aggrieved individuals who experienced retaliation in violation of the ADEA while working for South Valley.

169.      Since least January 1, 2021, South Valley has engaged in unlawful employment practices against Nevarez, Perez, and other aggrieved individuals by retaliating against them in

violation of Section 4 of the ADEA, 29 U.S.C. § 623(d), for opposing age discrimination or otherwise engaging in protected activity under ADEA.

170.    Nevarez, Perez, and the class of aggrieved individuals engaged in protected activity under the ADEA when they opposed age harassment or discrimination or complained to South Valley about age harassment, discrimination, or retaliation.

171.    Nevarez, Perez, and the class of other aggrieved individuals suffered adverse terms and conditions of employment, including discharge, because they engaged in protected activity by opposing and complaining about age harassment, discrimination, and retaliation.

172.    The effect of the practices complained of above has been to deprive Nevarez, Perez, and other aggrieved individuals of equal employment opportunities and otherwise affect their status as employees because of their engagement in protected activity under the ADEA.

173.    The unlawful employment practices complained of above were willful within the meaning of Section 7(b) of the ADEA, 28 U.S.C. § 626(b).

### FIFTH CLAIM FOR RELIEF
### RETALIATION IN VIOLATION OF TITLE VII
### 42 U.S.C. § 2000e-3(a)

174.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

175.    The EEOC brings this fifth claim of relief on behalf of Nevarez, Perez, and other aggrieved individuals who experienced retaliation in violation of Title VII while working for South Valley.

176.    Since least January 1, 2021, South Valley has engaged in unlawful employment practices against Nevarez, Perez, and other aggrieved individuals by retaliating against them in

violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), for opposing or complaining about unlawful employment practices, including national origin discrimination and retaliation.

177.    Nevarez, Perez, and the class of aggrieved individuals engaged in protected activity under Title VII when they opposed or complained to South Valley about unlawful employment practices under Title VII, including national origin discrimination and retaliation.

178.    Nevarez, Perez, and the class of other aggrieved individuals suffered adverse terms and conditions of employment, including discharge, because they engaged in protected activity by opposing and complaining about unlawful employment practices under Title VII, including national origin discrimination and retaliation.

179.    The effect of the practices complained of above has been to deprive Nevarez, Perez, and other aggrieved individuals of equal employment opportunities and otherwise affect their status as employees because of their engagement in protected activity under Title VII.

180.    The unlawful retaliatory employment practices complained of above were intentional.

181.    The unlawful retaliatory employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of employees of South Valley.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, successors, attorneys and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of age and from retaliating against employees who oppose unlawful employment practices.

20

B.      Order Defendant to institute and carry out policies, practices, and programs that

provide equal employment opportunities for individuals aged 40 and older and eradicate

the effects of Defendant's past and present unlawful employment practices.

C.      Grant a judgment requiring Defendant to pay appropriate backpay wages in an

amount to be determined at trial, an equal sum as liquidated damages, and/or

prejudgment interest to Nevarez, Perez, and the class of other aggrieved individuals for

Defendant's violations of the ADEA.

D.      Order Defendant to make whole Nevarez, Perez, and other aggrieved individuals

retaliated against in violation of Title VII by providing compensation for past and future

nonpecuniary losses resulting from the unlawful employment practices complained of

above, including emotional pain and suffering, in amounts to be determined at trial.

E.      Order Defendant to pay Nevarez, Perez, and other aggrieved individuals punitive

damages for its malicious and reckless conduct in amounts to be determined at trial.

F.      Order Defendant to make whole Nevarez, Perez, and other aggrieved individuals

who were adversely affected by the unlawful practices described above, by providing the

affirmative relief necessary to eradicate the effects of its unlawful practices.

G.      Grant such further relief as the Court deems necessary and proper in the public

interest.

H.      Award the Commission its costs of this action.

RESPECTFULLY SUBMITTED this 17th day of June 2025.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Andrew Rogers
Acting General Counsel

Christopher Lage
Associate General Counsel

Mary Jo O'Neill
Regional Attorney
Phoenix District Office

Laurie Jaeckel
Assistant Regional Attorney
Denver Field Office

/s/ *Lucia Moran*
Lucia Moran
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Albuquerque Area Office
500 Gold Ave SW, Ste 6401
Albuquerque, NM 87103
Phone: (505)738-6722
lucia.moran@eeoc.gov

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the Acting General Counsel and Deputy General Counsel in Washington, D.C.